UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOLA GALINIS,

        Plaintiff,                              Hon. Wendell A. Miles

v.                                            Case No. 1:07-CV-118

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 48 years of age at the time of the ALJ's decision. (Tr. 22, 37). She successfully completed high school, attended college for an unspecified period of time, and earned an accounting certificate. (Tr. 244-45). Plaintiff worked previously as a data entry clerk, cook, dishwasher, and cashier. (Tr. 61-66).

Plaintiff applied for benefits on August 4, 2004, alleging that she had been disabled since January 1, 2004, due to asthma, emphysema, arthritis, low back pain, and bursitis. (Tr. 16, 77). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 37-47). On September 6, 2006, Plaintiff appeared before ALJ Richard Senander, with testimony being offered by Plaintiff and vocational expert, David Holwerda. (Tr. 240-67). In a written decision dated September 26, 2006, the ALJ determined that Plaintiff was not disabled. (Tr. 16-22). The Appeals Council declined to review the ALJ's decision, rendering it the Commissioner's final decision in the matter. (Tr. 4-6). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## MEDICAL HISTORY

On July 3, 2003, Plaintiff was examined by Dr. Karl Breitweiser. (Tr. 167-68). Plaintiff reported that she was experiencing asthma. (Tr. 167). The results of a physical examination

were unremarkable. *Id.* The doctor characterized Plaintiff's asthma as poorly controlled. (Tr. 168). The doctor also encouraged Plaintiff to stop smoking. *Id.*

X-rays of Plaintiff's chest, taken on January 28, 2004, revealed that: (a) the infiltrate within the mid right lung has resolved; (b) the left lung is clear; (c) the cardiomediastinal silhouette is normal; and (d) there existed no evidence of pleural effusion or pneumothorax. (Tr. 195, 197).

On March 23, 2004, Plaintiff participated in a "complete physical" examination conducted by Dr. Breitweiser. (Tr. 147-48). The results of this examination were unremarkable. (Tr. 148). Plaintiff also participated in an EKG examination, the results of which revealed "normal sinus rhythm, no hypertrophy or evidence of infarction." The results of a chest x-ray were likewise "unremarkable." Plaintiff was diagnosed with "asthma with persistent tobacco abuse." *Id.*

On May 25, 2004, Plaintiff was examined by Dr. Breitweiser. (Tr. 144-45). Plaintiff reported that she was experiencing "some" lower back pain which "occasionally" radiated to her right lower extremity. (Tr. 145). An examination of Plaintiff's spine revealed no evidence of tenderness or spasm. Plaintiff exhibited normal range of hip motion and straight leg raising was negative. There was also no evidence of motor function impairment. *Id.*

On June 23, 2004, Plaintiff reported that her back pain had "improved significantly" after taking Naprosyn. (Tr. 142).

On August 4, 2004, Plaintiff was examined by Dr. Breitweiser. (Tr. 138-39). Plaintiff reported that she was experiencing back pain, hip pain, and asthma. (Tr. 139). Plaintiff again reported that her back pain had improved with medication. An examination of Plaintiff's back revealed "some tenderness." The results of the examination were otherwise unremarkable. *Id.* The doctor diagnosed Plaintiff with hypertension, but noted that Plaintiff had not taken her medication.

4

(Tr. 138-39). Plaintiff was also diagnosed with hip pain and asthma, poorly controlled "primarily due to her tobacco abuse." (Tr. 138).

On September 29, 2004, Plaintiff was examined by Dr. Breitweiser. (Tr. 133-34). The results of a physical examination were unremarkable and a spirometry examination revealed "some mild airway obstruction." (Tr. 134). Plaintiff was urged to quit smoking. *Id.*

On December 1, 2004, J. Michael McCarthy, Ed.D. completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 101-15). Determining that Plaintiff suffered from depression with anxiety and alcohol abuse, the doctor concluded that Plaintiff satisfied the Part A criteria for Sections 12.04 (Affective Disorders) and 12.06 (Anxiety-Related Disorders) of the Listing of Impairments. (Tr. 102-10). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for these particular impairments. (Tr. 111). Specifically, the doctor concluded that Plaintiff experienced mild restrictions in the activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and never experienced episodes of decompensation. *Id.*

On June 10, 2005, Plaintiff was examined by Dr. Breitweiser. (Tr. 219). Plaintiff reported that she was experiencing lower back pain which radiated into her right lower extremity. Palpation of Plaintiff's back produced tenderness and straight leg raising was positive. *Id.* X-rays of Plaintiff's lumbar spine revealed "moderate" narrowing of the L4-5 and L5-S1 disc spaces. (Tr. 235). Plaintiff was instructed to participate in physical therapy. (Tr. 219). When she was examined on August 10, 2005, Plaintiff reported that "physical therapy helped quite a bit." (Tr. 218).

On August 15, 2005, Plaintiff participated in an MRI examination of her lumbar spine, the results of which revealed a "small volume of focal disc protrusion" at L5-S1. (Tr. 233-34).

On October 14, 2005, Plaintiff was examined by Dr. Breitweiser. (Tr. 212-13). Plaintiff reported that she was experiencing low back pain. (Tr. 212). An examination of Plaintiff's spine revealed "some" tenderness at L4-S1 and straight leg raising was positive on the right. *Id.* Dr. Breitweiser observed that Plaintiff's asthma was poorly controlled due to Plaintiff's "persistent tobacco abuse." (Tr. 213). As for Plaintiff's hypertension, the doctor reported that it was well controlled with medication. *Id.*

On January 13, 2006, Plaintiff was examined by Dr. Breitweiser. (Tr. 211). The doctor noted that Plaintiff had recently been discharged from treatment at a pain clinic after testing positive for cocaine use. Plaintiff walked with a normal gait and exhibited "minimal difficulty going from [a] seated to supine position." She also reported that her back pain was relieved with stretching and medication. *Id.*

On January 25, 2006, Plaintiff was examined by Dr. Breitweiser. (Tr. 209). Plaintiff reported that she was performing her "therapy stretches" and strengthening exercises" and that her back was "doing fairly well." Plaintiff exhibited 5/5 strength and the doctor observed that Plaintiff's symptoms were "stable." *Id.*

On February 22, 2006, Plaintiff was examined by Dr. Breitweiser. (Tr. 206). Plaintiff reported that she was experiencing "minimal" radicular symptoms with "no paresthesias or loss of function." Plaintiff reported that "with the medication she is able to sleep better" and experiences "increased activity level throughout the day." The results of the examination were unremarkable and the doctor reported that her condition was "stable." *Id.* X-rays of Plaintiff's chest revealed "stable appearance of the chest with no significant localized pathology." (Tr. 232).

On May 5, 2006, Plaintiff was examined by Dr. Breitweiser. (Tr. 205). The results of an examination were unremarkable with no evidence of tenderness in Plaintiff's spine. *Id.*

On July 28, 2006, Plaintiff was examined by Dr. Breitweiser. (Tr. 204). An examination of Plaintiff's back revealed no evidence of tenderness or spasm. The doctor reported that Plaintiff's back condition was "stable" and that her medication increased her level of mobility and activity. *Id.*

On August 31, 2006, Dr. Breitweiser authored a letter regarding his treatment of Plaintiff's complaints of back pain. (Tr. 201-02). The doctor reported that in May 2001 Plaintiff complained of "back discomfort" which was the result of "musculoskeletal strain and poor overall conditioning." (Tr. 201). When Plaintiff underwent a "complete physical exam" in March 2004, she offered "no complaints of back discomfort at that time." Plaintiff returned in May 2004, complaining of low back pain which was successfully treated with "conservative treatment with stretching and anti-inflammatories." *Id.*

The doctor noted that x-rays of Plaintiff's lumbosacral spine, taken on June 10, 2005, "demonstrated some moderate narrowing of the L4-5, L5-S1 anterior vertebral disc space – moderate degenerative joint disease." (Tr. 201, 235). The doctor also reported that the results of an August 15, 2005 MRI revealed "a small volume of focal disc protrusion" at L5-S1. (Tr. 201, 233-34). Dr. Breitweiser then referred Plaintiff to a pain clinic for treatment. (Tr. 201). After receiving an initial round of treatment, however, Plaintiff tested positive for cocaine use, at which point her treatment was terminated.

According to Dr. Breitweiser, from that date forward Plaintiff continued to complain of low back pain. As the doctor further observed, however, Plaintiff has exhibited "no evidence of

neurological deficit" and her symptoms have been fairly controlled with anti-inflammatory and analgesic medication. *Id.* The doctor nonetheless recommended that Plaintiff "be limited to standing no more than fifteen minute[s] at a time and sitting for no more than fifteen minutes at a time and limited to two hours total sitting per day and total standing or walking for only two hours per day as well." (Tr. 202).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

**B. The ALJ's Decision**

The ALJ determined that Plaintiff suffers from the following severe impairments: (1) asthma, (2) hypertension, and (3) chronic back pain syndrome. (Tr. 18). The ALJ concluded that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* The ALJ determined that despite her limitations, Plaintiff retained the capacity to perform her past relevant work as a data entry clerk. (Tr. 18-21). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

**1. The ALJ's Decision is Supported by Substantial Evidence**

Plaintiff bears the burden of demonstrating her entitlement to benefits, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following limitations: (1) she can lift/carry 10 pounds frequently and 20 pounds occasionally; (2) she can sit, stand, and walk for six hours each during an 8-hour workday; (3) she can only occasionally stoop and crouch; (4) she cannot work in environments with poor ventilation or concentrated exposure to pulmonary irritants. (Tr. 18). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence. A vocational expert testified that an individual with Plaintiff's RFC would be able to perform Plaintiff's past relevant work as a data entry clerk. Accordingly, the ALJ concluded that Plaintiff was not disabled.

a. The ALJ Properly Assessed the Medical Evidence

On August 31, 2006, Dr. Breitweiser authored a letter regarding his treatment of Plaintiff's complaints of back pain. (Tr. 201-02). The doctor concluded this letter by stating that Plaintiff "be limited to standing no more than fifteen minute[s] at a time and sitting for no more than fifteen minutes at a time and limited to two hours total sitting per day and total standing or walking for only two hours per day as well." (Tr. 202). At the administrative hearing, the vocational expert testified that if limited to this extent there existed no work which Plaintiff could perform. (Tr. 266). Plaintiff asserts that because Dr. Breitweiser was her treating physician, the ALJ was obligated to afford controlling weight to his opinion, thus compelling the conclusion that she is disabled.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Accordingly, the

medical opinions and diagnoses of treating physicians are given substantial deference, and if such opinions and diagnoses are uncontradicted, complete deference is appropriate. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ is not bound by conclusory statements, particularly when unsupported by detailed objective criteria and documentation. *See Cohen*, 964 F.2d at 528. Moreover, the ALJ need not defer to an opinion contradicted by substantial medical evidence. *See Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

The ALJ accorded "little weight" to Dr. Breitweiser's opinion. (Tr. 20-21). In support of this conclusion, the ALJ observed that Dr. Breitweiser's opinion was inconsistent with the objective medical evidence and Plaintiff's treatment history. As detailed above, examinations of Plaintiff's back consistently revealed only minimal to moderate symptoms, which responded quite favorably to conservative treatment. Such is inconsistent with the extreme limitations articulated by Dr. Breitweiser. In sum, there exists substantial evidence to support the ALJ's decision to accord little weight to Dr. Breitweiser's opinion.

b. The ALJ Properly Discounted Plaintiff's Subjective Allegations

The ALJ discounted Plaintiff's subjective allegations, finding such to be "not fully credible." (Tr. 20). Plaintiff argues that the ALJ improperly discounted her subjective allegations. Specifically, Plaintiff alleges that the ALJ incorrectly found that she was untruthful regarding her

11

cocaine use. Plaintiff also alleges that the ALJ improperly discounted her credibility because she continued to smoke.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to

resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations not to be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

As noted above, Plaintiff was discharged from treatment at a pain clinic after she tested positive for cocaine. (Tr. 211). When questioned by the ALJ at the administrative hearing, Plaintiff stated that she had not used cocaine since high school. (Tr. 256). However, when reminded of the pain clinic incident Plaintiff changed her testimony, stating that "if they told my doctor that, I guess I'd forgotten." Plaintiff then acknowledged that she had used cocaine at a 2005 Halloween party. *Id.* Dr. Breitweiser's treatment notes, however, indicate that Plaintiff tested positive for drug use in the *summer* of 2005. (Tr. 209).

With respect to this issue, the ALJ found that Plaintiff's testimony put her credibility "in doubt." (Tr. 20). While this evidence may not constitute the most damaging impeachment of a claimant's credibility, as Defendant correctly asserts the ALJ was nonetheless entitled to consider such when assessing Plaintiff's credibility. In this respect, the Court notes that the ALJ's credibility

13

assessment did not rest on this one issue, but was instead based on several factors as detailed in the ALJ's opinion.

Plaintiff was urged by her care providers on numerous occasions to stop smoking because such was exacerbating her asthma. As the ALJ observed, Plaintiff nonetheless continued to smoke. The ALJ further concluded that "[t]he fact that [Plaintiff] continues to smoke, which aggravates her pulmonary condition, also goes to her credibility and demonstrates that she could perform at least light work activity." (Tr. 21).

The Sixth Circuit has indicated that where a claimant declines to stop smoking despite being instructed by her care providers otherwise is an appropriate factor to consider when assessing the claimant's credibility. *See Hall-Thulin v. Commissioner of Social Security*, 1997 WL 144237 at *1 (6th Cir., March 27, 1997) (quoting *Sias v. Secretary of Health and Human Services*, 861 F.2d 475, 480 (6th Cir. 1988)) (claimant's failure to stop smoking was inconsistent with allegations of disabling pain and limitation); *Mullins v. Secretary of Health and Human Services*, 836 F.2d 980, 985 (6th Cir. 1987) (same).

Contrary to Plaintiff's assertions, there is no evidence that the ALJ "has a personal bias against people who smoke." Moreover, the Court does not dispute Plaintiff's contention that it can very difficult be to stop smoking. However, the record in this matter does not indicate merely that Plaintiff experienced difficulty stopping smoking, but instead reveals that she repeatedly expressed no interest in quitting smoking. In February 2003, Plaintiff reported that "she is not interested in quitting." (Tr. 175). In July 2003, Plaintiff reported that she "plans on quitting at some point but not today." (Tr. 165). In January 2004, Plaintiff reported that she "does not plan on quitting" smoking. (Tr. 158). In May 2004, Plaintiff reported that she "plans to quit soon but not

yet." (Tr. 145). In August 2004, Plaintiff reported that she is "not interested in quitting." (Tr. 137). In October 2005, Plaintiff reported that she "does not plan on quitting [smoking] anytime soon." (Tr. 212). In January 2006, Plaintiff reported that she is "not interested" in quitting smoking. (Tr. 211).

While it may be inappropriate to discredit a claimant's credibility where the claimant has attempted without success to stop smoking, such is not the case presently. The ALJ did not discredit Plaintiff's credibility because of her inability to stop smoking, but instead because of her repeated expressions that she did not even want to stop smoking. Considering that Plaintiff's care providers repeatedly instructed Plaintiff to stop smoking because it was exacerbating her asthma symptoms, Plaintiff's repeated statements that she did not want to stop smoking properly calls into doubt her subjective allegations concerning her asthma-related limitations. In sum, there exists substantial evidence to support the ALJ's credibility determination.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure

to file objections within the specified time waives the right to appeal the District Court's order. *See*

*Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Date:  January 10, 2008                                          /s/ Ellen S. Carmody                      
                                                                 ELLEN S. CARMODY
                                                                 United States Magistrate Judge